**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

MATTHEW GOTTLIEB, individually and
on behalf of all others similarly situated,

                   Plaintiff,                         Case No. 9:16-cv-81911-RLR

     v.

CITGO PETROLEUM CORPORATION,

                   Defendant.

_____/

**PLAINTIFF'S AND CLASS COUNSEL'S MOTION FOR FINAL APPROVAL OF**
**CLASS SETTLEMENT AND APPLICATION FOR SERVICE AWARD, ATTORNEYS'**
**FEES AND EXPENSES, AND INCORPORATED MEMORANDUM OF LAW**

The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and its implementing regulations, were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive telemarketing calls…." During the course of vigorously contested litigation involving TCPA claims asserted by Plaintiff on behalf of approximately 93,000 consumers who received some combination of three unauthorized marketing text messages from Defendant, CITGO Petroleum Corporation ("CITGO"), Plaintiff, and Class Counsel negotiated the Settlement Agreement and Release, attached as *Exhibit A* ("Agreement" or "Settlement").[1] The Settlement – which consists of CITGO's agreement to pay $8,000,000 in cash, plus up to $300,000 for fees and costs associated with the Notice Program and Settlement Administration – is a great result for the Settlement Class. *See* Declaration of Jeff Ostrow ¶ 2, attached as *Exhibit B* ("Ostrow Decl."). Based on the controlling legal standards and supporting facts, the Settlement is fair, adequate and reasonable.

---

[1] All capitalized terms used herein have the same meanings as those defined in the Agreement.

Plaintiff and Class Counsel now seek Final Approval of the Settlement.  Class Counsel also request that the Court award a Service Award to the Class Representative, whose willingness to represent the Settlement Class and participation in the Action helped make the Settlement possible. Finally, Class Counsel request that the Court award attorneys' fees and approve the reimbursement of certain expenses incurred in prosecuting the Action.

## I.    INTRODUCTION

Between 2014 and 2016, CITGO sponsored text-to-win sweepstakes contests that were promoted at concerts, theme parks, sporting events, and retail gas stations. CITGO utilized the services of two text-messaging vendors, MTI Connect LLC d/b/a Black Canyon ("Black Canyon") and mGage, LLC ("mGage"), to administer these text-to-win promotions.

On July 31, 2015, Plaintiff entered two of the CITGO-sponsored sweepstakes contests while attending a concert in West Palm Beach.  In late 2016, CITGO sponsored several new sweepstakes contests using Black Canyon and mGage to market those contests to the mobile phone numbers of many of the people who had entered the prior sweepstakes contests, including Plaintiff.

In total, Plaintiff received three text messages from CITGO in 2016: one in August, one in October, and one in November. In addition to Plaintiff, CITGO sent some combination of these three text messages to approximately 93,000 other mobile phone numbers belonging to people who, like Plaintiff, had previously entered other CITGO-sponsored sweepstakes contests.

Plaintiff sued CITGO alleging that CITGO violated the TCPA by sending the above described text messages to him and approximately 93,000 other consumers. CITGO denied liability and asserted affirmative defenses.  The parties undertook extensive discovery and motion practice, including a motion for class certification.  The Court issued a scheduling order that established early deadlines for the completion of all discovery and the filing of all pretrial motions.

During the course of conducting discovery, the parties participated in mediation with David Lichter, a well-respected mediator in Miami.  Following two mediation sessions, the Parties agreed to settle the Action to avoid the risks and uncertainties associated with continued litigation.

On August 14, 2017, the Court granted Preliminary Approval to the Settlement, directed that notice be provided to the Settlement Class, and established a deadline for the filing of a motion for Final Approval of the Settlement.

Plaintiff and Class Counsel now request that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint the Plaintiff as Class Representative; (4) appoint as Class Counsel the attorneys listed in paragraph 24 of the Agreement; (5) approve the Plaintiff's requested Service Award; (6) award Class Counsel attorneys' fees and reimbursement of certain expenses; and (7) enter Final Judgment dismissing the Action with prejudice.

## II.     MOTION FOR FINAL APPROVAL

### A.     Procedural History

On November 23, 2016, Plaintiff filed his Complaint against CITGO, alleging violations of the TCPA, and seeking, *inter alia,* monetary damages. [DE #1].  On January, 2017, CITGO filed an Answer and Affirmative Defenses. [DE #11]. Thereafter, on January 19, 2017, the Court entered a Scheduling Order and Order Referring Case to Mediation. [DE #13].

Discovery commenced in February, 2017.  Class Counsel served written discovery, documents requests, a deposition notice on CITGO, and subpoenas for documents and depositions on CITGO's mobile marketer, Black Canyon, and mGage, the company Black Canyon contracted with to enable it to send text messages on CITGO's behalf.

In response, CITGO and its agents produced over 100,000 pages of paper and electronic documents that were reviewed by Class Counsel and its data expert.  Class Counsel also deposed corporate representatives of CITGO and Black Canyon in Houston and Milwaukee, respectively.

On April 27, 2017, the Parties participated in an all-day mediation under the supervision of David Lichter, a veteran mediator in complex litigation and class actions. No agreement to settle was reached that day, but the Parties agreed to continue settlement discussions.

On June 1, 2017, mGage produced tens of thousands of additional pages of electronic data to Plaintiff that were reviewed by Class Counsel.  On June 2, 2017, Plaintiff filed a Motion for Class Certification. [DE #24]. On June 30, 2017, CITGO filed its Response in Opposition to Plaintiff's Motion [DE #44], and on July 14, 2017, Plaintiff filed a Reply in Support.  [DE #54].

While class certification was pending, the Parties continued to engage in additional discovery and motion practice.  On June 2, 2017, CITGO filed an Omnibus Motion to Stay, for Leave to File a Serial Motion for Partial Summary Judgment, Leave to File a Third Party Complaint, and for a Case Management Conference.  [DE #26].

On June 7, 2017, CITGO filed a Motion for Extension of Time to Respond to Plaintiff's Motion for Class Certification [DE #29] and on June 12, 2017, Plaintiff filed responses to both motions. [DE #31, #32].  On June 13, 2017, the Court denied the Omnibus Motion and denied in part the Motion for Extension. [DE #35, #36].

On June 12, 2017, the Parties filed a Joint Motion to Amend the Scheduling Order [DE #33], that was denied by the Court on June 13, 2017.  [DE #37].  On June 13, 2017, the Parties filed a second Joint Motion to Amend the Scheduling Order [DE #38], which was also denied by the Court.  [DE #39].

On June 14, 2017, the Parties exchanged initial expert witness lists and disclosures.  On June 22, 2017, Plaintiff filed a Motion to Strike CITGO's Anticipated Expert Report. [DE #41], and on July 6, 2017, CITGO filed a Response to the Motion to Strike.  [DE #48].  On July 7, 2017, Plaintiff filed a Reply in Support of the Motion to Strike.  [DE #50].   On July 10, 2017, the Court held oral argument, and denied the Motion to Strike. [DE #51].

On June 15, 2017, CITGO served subpoenas for additional documents on Black Canyon and mGage.   On June 28, 2017, CITGO served written discovery, including Requests for Production, Requests for Admissions and Interrogatories, on Plaintiff.

On July 6, 2017, the Parties scheduled the depositions of CITGO's expert witness and a continued deposition of CITGO's corporate representative for July 25 and 28, 2017, respectively. On July 7, 2017, CITGO served a subpoena for deposition of one of Black Canyon's employees, scheduling the deposition for July 20, 2017.  Also on July 7, 2017, Plaintiff served a subpoena for documents on Verizon Wireless.  On July 14, 2017, Plaintiff served his rebuttal expert witness list and disclosures.  On July 17, 2017, Plaintiff served an additional subpoena for documents and deposition on mGage and a subpoena for documents and deposition on one of mGage's employees.

On July 19, 2017, the Parties participated in a second full-day of mediation with Mr. Lichter.  During the course of the second mediation, the Parties reached an agreement to settle the Action, and executed a term sheet memorializing their understanding.  The same day, the Parties filed a Notice of Settlement [DE #55], and the Court entered an Order temporarily suspending further proceedings, pending the drafting and execution of a comprehensive Settlement Agreement and the Preliminary Approval and Final Approval as required by Rule 23 of the Federal Rules of Civil Procedure. [DE #56].  Following further negotiations and discussions, the Parties resolved all remaining issues, culminating in the signing of the Settlement Agreement on August 4, 2017.

On August 8, 2017, Plaintiff and Class Counsel filed their Motion for Preliminary Approval. [DE #60]. On August 14, 2017, the Court entered the Preliminary Approval Order that, *inter alia*, directed the Notice be given to the Settlement Class and established deadlines for the filing of the Motion for Final Approval, the timely submission or objections or requests for exclusions, and set a date for the Final Approval Hearing. [DE #61].

### B.      Summary of the Settlement Terms

The Settlement terms are detailed in the Agreement attached. The following is a summary of its material terms.

#### 1.      The Settlement Class

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Settlement Class is defined as:

> All persons in the United States who had one or more CITGO Marketing Text Messages sent to their cellular telephone number.

Agreement ¶ 44.

#### 2.      Monetary Relief

The Settlement required CITGO to deposit $8,000,000 into the Escrow Account within 30 days following entry of the Preliminary Approval Order. Agreement ¶ 62. CITGO deposited that sum on September 14, 2017, creating the Settlement Fund. Ostrow Decl. ¶ 3.

The Settlement Fund will be used to: (i) distribute Settlement Fund Payments to Settlement Class Claimants; (ii) pay any Court-ordered attorneys' fees and costs awarded to Class Counsel; (iii) pay any Court-ordered Service Award to the Plaintiff; (iv) pay all Taxes; (v) pay any costs of the Notice Administrator and Settlement Administration exceeding the $300,000 to be paid by CITGO; (vi) distribute remaining Settlement Funds in a second distribution to Settlement Class

6

Claimants; (vii) pay any additional fees or expenses not specifically enumerated in paragraph 65 of the Agreement, subject to approval of Class Counsel and CITGO.  Agreement ¶ 65, a-h.

In addition to the Settlement Fund, CITGO deposited $300,000 into the Escrow Account to pay for costs and fees of the Settlement Administrator and Notice Administrator incurred in connection with the Settlement, for which it is responsible under the Agreement.  *Id.* at ¶ 46.

In order to receive a portion of the Settlement Fund, Settlement Class members are required to complete an online or paper Claim Form.  Claim Forms were mailed by U.S. Mail or by email to each Settlement Class member, and are available at the Settlement Website.  Each Settlement Class member who timely files a valid Claim Form shall become a Settlement Class Claimant and thereafter automatically receive a Settlement Fund Payment payable by check. As of October 12, 2017, the Settlement Administrator has received a total of 21,437 valid Claim Forms.

The amount of each Settlement Fund Payment shall be determined by the following formula: Net Settlement Fund divided by total number of Settlement Class Claimants.  Net Settlement Fund = Settlement Fund minus Settlement Costs.  Agreement ¶¶ 24, 66.  Settlement Class Claimants will be sent their Settlement Fund Payments to the address they submitted on their Claim Form no later than 45 days following the Effective Date. *Id*.

With the possible exception of the funds described in section "i" hereinbelow, none of the Settlement Funds shall revert back to CITGO.  Four months after the date the Settlement Administrator mails the first round of Settlement Fund Payments, any remaining funds in the Settlement Fund shall be distributed as follows:

i.      First, to CITGO to reimburse it for the actual fees and costs it paid the Notice Administrator and Settlement Administrator, up to a maximum of $300,000;

ii.      Second, on a *pro rata* basis to participating Settlement Class Claimants who

received Settlement Fund Payments in the first distribution, to the extent feasible and practical in light of the costs of administering such subsequent payments, unless other specific reasons exist that would make such further distributions impossible or unfair; and;

iii.      Third, in the event the costs of preparing, transmitting and administering such subsequent payments are not feasible and practical to make individual distributions or other specific reasons exist that would make such further distributions impossible or unfair, Class Counsel and CITGO shall file recommendations with the Court for distribution of the residual funds consistent with the American Law Institute, *Principles of Aggregate Litigation* § 3.07(c), together with supporting materials.  The Court shall have the discretion to approve, deny, or modify, in whole or in part, the proposed recommendations for distribution in a manner consistent with the American Law Institute, *Principles of Aggregate Litigation* § 3.07(c).

iv.      All costs associated with the disposition of remaining funds – whether through additional distributions to Settlement Class Claimants and/or through an alternative plan approved by the Court – shall be payable out of the Settlement Fund. Agreement ¶ 67.

### 3.      Class Release

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released CITGO from claims related to the subject matter of the Action. The detailed release language is found in Section XIII of the Agreement.  Agreement ¶ 71.

### 4.      Settlement Notice

The Notice Program was designed to provide the best notice practicable, and was tailored to take advantage of the information CITGO had available about Settlement Class members. Agreement ¶¶ 49-59.  CITGO has and will continue to pay the fees and costs associated with the Notice Program and Settlement Administration. *Id.* at ¶¶ 46.  The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action,

the terms of the Settlement, Class Counsel's Attorneys' Fee application and request for Service Award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement. *See* Declaration of Cameron Azari ¶¶ 6-11, 37-40, attached as *Exhibit C* ("Azari Decl."); Ostrow Decl. ¶ 4.   The Notices and Notice Program constituted sufficient notice to all persons entitled to notice, and satisfied all applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.   Azari Decl. ¶¶ 37-40.

### 5.     Settlement Termination

Either Party may terminate the Settlement if it is rejected or materially modified by the Court or an appellate court.  Agreement ¶ 76.

### 6.     Service Award

Class Counsel are entitled to request, and CITGO will not oppose, a Service Award of $5,000 for the Class Representative, Matthew Gottlieb.  Agreement ¶ 74.  If the Court approves it, the Service Award will be paid from the Settlement Fund, and will be in addition to any other relief to which the Class Representative is entitled as a Settlement Class Member.  *Id.*  The Service Award will compensate Class Representative Gottlieb for his time and effort in the Action, and for the risks he undertook in prosecuting the Action against CITGO.  Ostrow Decl. ¶ 5.

### 7.     Attorneys' Fees and Costs

Class Counsel are entitled to request, and CITGO will not oppose, attorneys' fees of up to one-third (33.33%) of the Settlement Fund, plus reimbursement of litigation costs and expenses. Agreement ¶ 72.  The Parties negotiated and reached agreement regarding fees and costs only after agreeing on all other material terms of the Settlement.  Agreement ¶ 75; Ostrow Decl. ¶ 6.

### C.     <u>Argument</u>

Court approval is required for settlement of a class action.  Fed. R. Civ. P. 23(e).  The federal courts have long recognized a strong policy and presumption in favor of class settlements.

9

The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. Unit B 1982). In evaluating a proposed class settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 28, 2006) (quoting *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971)). Indeed, "[s]ettlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977). Class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources. Therefore, "federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). The Settlement here is more than sufficient under Rule 23(e) and Final Approval is clearly warranted.

> **1.      The Court Has Personal Jurisdiction Over the Settlement Class Because the Settlement Class Received Adequate Notice and an Opportunity to Be Heard.**

In addition to having personal jurisdiction over the Plaintiff, who is a party to this Action, the Court also has personal jurisdiction over all members of the Settlement Class because they received the requisite notice and due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 306 (3d Cir. 1998).

### a.       The Best Notice Practicable Was Furnished.

The Notice Program was comprised of four parts: (1) direct mail postcard notice ("Mailed Notice") to all identifiable Settlement Class members; (2) email notice ("Email Notice") designed to reach those Settlement Class members for whom CTIGO maintained email addresses; (3) online notice comprised of banner advertisements and a press release ("Online Notice"); and (4) a "Long-Form" notice with more detail than the direct mail or email notices, that has been available on the Settlement Website and via mail upon request.  Agreement, Section VII; Azari Decl. ¶¶ 13-19.

Each facet of the Notice Program was timely and properly accomplished.  Azari Decl. ¶¶ 9-11, 20.   The Notice Administrator received data from CITGO that identified the names, last known addresses, and some emails of 66,504 identifiable Settlement Class members.   On September 8, 2017, the Notice Administrator ran the addresses through the National Change of Address Database and mailed postcards to 32,861 Settlement Class members, and emailed and additional 33,643 Settlement Class members.  *Id*. at ¶ 13, 15.  The Notice Administrator also purchased online banner advertisements, along with sponsored search listing, on the *Google Ad Network*, *Yahoo! Ad Network,* and Bing, which secured 147.2 million adult impressions.  *Id*. at ¶ 11, 20-21.  The Notice Administrator performed follow up research and is continuing to attempt, prior to the Final Approval Hearing, to re-mail postcards to Settlement Class members whose initial postcard notices were returned by the postal service.  *Id*. at ¶ 18.  The Notice Administrator also mailed Long Form notices in response to requests from Settlement Class members.  *Id*. at ¶ 17.  In sum, between the Mailed Notice, Email Notice, Online notice, and Long Form Notice, approximately 80% of the Settlement Class received notice. *Id*. at ¶ 9.

The   Notice   Administrator   also   established   the   Settlement   Website, www.citgotcpasettlement.com, which went live on September 7, 2017.  The Long Form Notice,

along with other key pleadings, have been and will continue to be available on the Settlement Website or upon request to the Settlement Administrator, to enable Settlement Class members to obtain detailed information about the Action and the Settlement. Azari Decl. ¶¶ 26-28. As of October 12, 2017, the Settlement Website had 96,288 unique visitors with a total of 204,841 page views. *Id*. at ¶ 28. In addition, a toll-free number, 888-457-6608, was established and has been operational since September 7, 2017. *Id*. at ¶ 29. By calling, Settlement Class members are able listen to answers to frequently asked questions and request a copy of the Long Form Notice. *Id*. As of October 12, 2017, the toll free number had handled 226 calls for a total of 611 minutes. *Id*.

> **b.      The Notice and Notice Program Were Reasonably Calculated to Inform the Settlement Class of Their Rights.**

The Court-approved Notice and Notice Program satisfied due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig*., 552 F.2d at 1104-05. The Notice, among other things, defined the Settlement Class, described the release provided to CITGO under the Settlement, as well as the amount and proposed distribution of the Settlement proceeds, and informed Settlement Class members of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. It also notified Settlement Class members that a final judgment would bind them unless they opted-out, and told them where they could get more information – for example, at the Settlement Website that has a copy of the Agreement, as well as other important documents. Further, the Notice described Class Counsel's intention to seek attorneys' fees of up to one-third of the Settlement Fund, plus expenses, and a Service Award for the Class Representative. Hence, Settlement Class members were provided with the best practicable notice that was "reasonably calculated, under [the] circumstances, to apprise interested

12

parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15); *see* Azari Decl. ¶¶ 37-40.

As of October 12, 2017, the Settlement Administrator had received one request for exclusion and no objections to the Settlement had been filed. Ostrow Decl. ¶ 7. The opt-out and objection period end on October 30, 2017.

### 2. The Settlement Should Be Approved as Fair, Adequate and Reasonable. [2]

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)). Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness and adequacy of a class settlement under Rule 23(e):

> (1)    the existence of fraud or collusion behind the settlement;

---

[2] As of October 12, 2017, there have been no objections to the Settlement or Class Counsel's application for attorneys' fees. In the event any timely objections are submitted or, alternatively, should the Court request it, Class Counsel will submit an expert declaration addressing the relevant issues.

(2)     the complexity, expense, and likely duration of the litigation;

(3)     the stage of the proceedings and the amount of discovery completed;

(4)     the probability of the plaintiffs' success on the merits;

(5)     the range of possible recovery; and

(6)     the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986.  The analysis of these factors set forth below shows this Settlement to be eminently fair, adequate and reasonable.

### a.     There Was No Fraud or Collusion.

This Court is aware of the vigor with which the Parties litigated until they reached the Settlement.  The sharply contested nature of the proceedings in this Action demonstrates the absence of fraud or collusion behind the Settlement.  *See, e.g.*, *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been adversarial, featuring a high level of contention between the parties"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988) (record disclosed no evidence of collusion, but to the contrary showed "that the parties conducted discovery and negotiated the terms of settlement for an extended period of time"), *aff'd*, 893 F.2d 347 (11th Cir. 1989).

Class Counsel negotiated the Settlement with similar vigor.  Plaintiff and the Settlement Class were represented by experienced counsel throughout the negotiations.  Class Counsel and CITGO engaged in formal mediation twice with David Lichter on April 27, 2017 and July 19, 2017.  All negotiations were arm's-length and extensive.  Ostrow Decl. ¶ 8; *see also Perez v.*

14

*Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

> **b.     The Settlement Will Avert Years of Complex and Expensive Litigation.**

The claims and defenses are complex; litigating them has been both difficult and time-consuming, and recovery by any means other than settlement would require additional years of litigation.  Ostrow Decl. ¶ 9.   *See United States v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial."); *In re Domestic Air Transp. Antitrust Litig*., 148 F.R.D. 297, 317, 325-26 & n.32 (N.D. Ga. 1993) ("[A]djudication of the claims of two million claimants could last half a millennium").

In contrast, the Settlement provides immediate and substantial monetary benefits to approximately a Settlement Class which includes 21,437 Settlement Class Claimants.  As stated in *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

*Id*. at 560 (alterations in original) (quoting *Oppenlander v. Standard Oil Co*., 64 F.R.D. 597, 624 (D. Colo. 1974)); *see also In re U.S. Oil & Gas Litig*., 967 F.2d 489, 493 (11th Cir. 1992) (noting that complex litigation "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive").  Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992)

(citation omitted), there can be no doubt about the adequacy of the present Settlement, which provides reasonable benefits to the Settlement Class.

### c. The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Class Counsel negotiated the Settlement with the benefit of significant litigation. Ostrow Decl. ¶ 10. Specifically, Class Counsel reviewed over 100,000 pages and electronic documents that were produced by CITGO and its agents, took two full-day depositions, and fully prepared to take three additional depositions. Plaintiff also fully briefed a motion for class certification, and spent considerable time researching and navigating Defendant's numerous defenses. As such, Class Counsel's analysis and understanding of the legal obstacles positioned them to evaluate with the strengths and weaknesses of Plaintiff's claims and Defendant's defenses through the conclusion of the litigation, as well as the range and amount of damages that were potentially recoverable if the Action proceeded to judgment on a class-wide basis. Ostrow Decl. ¶ 11.

### d. Plaintiff and the Class Still Faced Significant Obstacles to Prevailing.

The "likelihood and extent of any recovery from the defendants absent . . . settlement" is another important factor in assessing the reasonableness of a settlement. *Domestic Air*, 148 F.R.D. at 314; *see also Ressler*, 822 F. Supp. at 1555 ("A Court is to consider the likelihood of the

plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise.").

Class Counsel believe that Plaintiff had a strong case against Defendant. Ostrow Decl. ¶ 12. Even so, Class Counsel are mindful that Defendant advanced significant defenses that would have been required to overcome in the absence of the Settlement. *Id*. This Action involved several major litigation risks that loomed in the absence of settlement including, but not limited to, the pending motion for class certification, an anticipated motion to compel class-wide arbitration,[3] a motion for summary judgment, *Daubert* motions, trial, as well as appellate review following a final judgment. *Id*. Notably, the crux of Defendant's intended motion for summary judgment was that the mGage software Defendant used to transmit text messages was not an autodialer as defined by the TCPA, and therefore, CITGO could not be held liable under the TCPA for the text messages received by Plaintiff and members of the class. In support of their motion for summary judgment, Defendant intended on relying on *Jenkins,* an 11th Circuit court that analyzed the same mGage software Defendant used and granted summary judgment holding that the mGage software, as used, was not an autodialer as defined by the TCPA. *See Jenkins v. mGage, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 106769, at *20 (N.D. Ga. Aug. 12, 2016) (granting summary judgment holding that the mGage software was not an autodialer as defined by the TCPA).

Apart from the risks, continued litigation would have involved substantial delay and expense, which further counsels in favor of Final Approval. Ostrow Decl. ¶ 13. The uncertainties and delays from this process would have been significant. *Id*.

---

[3] *See* Defendant's Opposition to Plaintiff's Motion for Class Certification [DE #44], p. 11 ("A significant number of *absent* members of the proposed classes have agreed to arbitration and class-waiver provisions…[i]f the Court certifies either proposed class, CITGO intends to move to remove those absent class members from the classes and to compel those who agreed to arbitration provisions to arbitrate their claims.")

17

Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement cannot but a fair compromise. *See, e.g.*, *Haynes v. Shoney's*, No. 89-30093-RV, 1993 U.S. Dist. LEXIS 749, at *16-17 (N.D. Fla. Jan. 25, 1993) ("The risks for all parties should this case go to trial would be substantial. …. It is possible that trial on the merits would result in … no relief for the class members. … Based on … the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement … is a fair and reasonable compromise."); *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" creating "great uncertainty as to the fact and amount of damage," making it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

> e.  **The Benefits Provided by the Settlement Are Fair, Adequate and Reasonable Compared to the Range of Possible Recovery.**

In determining whether a settlement is fair given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).  Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id*.  "[T]he court must remember that "compromise is the essence of settlement.  A just result is often no more than an arbitrary point between competing notions of reasonableness." *Raines v. Florida*, 987 F. Supp. 1416, 1418 (N.D. Fla. 1997) (citing *Bennett*, 737 F.2d at 986) (internal annotations omitted).  This is because fairness of a settlement must be evaluated in light of "the likelihood of success on the merits, the complexity, expense, and duration of litigation, the judgment and experience of trial counsel, and objections raised to the settlement."

*Id.*  Thus, courts regularly find settlements to be fair where "[p]laintiffs have not received the optimal relief."  *Warren*, 693 F. Supp. at 1059; *see, e.g.*, *Great Neck Capital Appreciation Investment P'ship, L.P. v. PriceWaterHouseCoopers, L.L.P.*, 212 F.R.D. 400, 409-10 (E.D. Wis. 2002) ("The mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement.").

Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, as well as the appropriate basis upon which to settle them. Ostrow Decl. ¶ 14.  Through this Settlement, Plaintiff secured a recovery of what will likely equate to approximately $250.00[4] per Settlement Class Claimant. Ostrow Decl. ¶ 15.  As of the date of this Motion, there are approximately 21,437 Settlement Class Claimants. *Id.*  When one considers the $300,000 in Notice Administration and Settlement Administration costs that CITGO is paying, the Settlement is even more beneficial.  *Id.* ¶ 16.  Pursuant to the TCPA, each injured Settlement Class member could have received $500.00 for each violative text message received upon a successful verdict at trial.

This Settlement provides an extremely fair and reasonable recovery to Settlement Class members when considering Defendant's defenses, as well as the challenging, unpredictable path of litigation that Plaintiff would otherwise have continued to face in the trial and appellate courts. Ostrow Decl. ¶ 17; *See Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-2440 (VEC), 2017 U.S. Dist. LEXIS 146343, at *35 (S.D.N.Y. Sep. 8, 2017) (a payout of over $232 to each claiming Class Member "is a generous recovery for a minor annoyance and exceeds many other court-approved TCPA class settlements."); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, LEXIS 806549, at *7 (N.D. Ill. 2016) ($52.50 payout for each claimant); *Bayat v. Bank of the W.*, No. C-13-2376

---

[4]This assumes the Claims Period ended on October 12, 2017.  The period ends on December 14, 2017; however, the vast majority of all Claims have already been filed.

EMC, 2015 U.S. Dist. LEXIS 50416, at *16 (N.D. Cal. Apr. 15, 2015) ($151 payout for each claimant); *Arthur v. Sallie Mae, Inc.*, 2012 U.S. Dist. LEXIS 132413 (W.D. Wash. Sept. 17, 2012) (approving TCPA settlement where each class claimant estimated to receive between $20 and $40).

### f.   The Opinions of Class Counsel, the Plaintiff, and Absent Settlement Class Members Favor Approval.

Class Counsel strongly endorse the Settlement. Ostrow Decl. ¶ 18.  The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren*, 693 F. Supp. at 1060; *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel.  '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).

There has been no opposition to the Settlement.  As of October 12, 2017, there has been only one opt-out and no objections.  Ostrow Decl. ¶ 19; Azari Decl. ¶ 32.  This is another indication that the Settlement Class is clearly satisfied with the Settlement.  Even if there were some objections, it is settled that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002); *also Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. 2001) ("In evaluating the fairness of a class action settlement, such overwhelming support by class members is strong circumstantial evidence supporting the fairness of the Settlement."); *Austin v. Pennsylvania Dept. of Corrections*, 876 F. Supp. 1437, 1458 (E.D. Pa. 1995) ("Because class members are presumed to know what is in their best interest, the reaction of the class to the Settlement Agreement is an important factor for the court to consider.").

### 3.      The Court Should Certify the Settlement Class.

Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the class members predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and adjudication of the controversy.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 93,000 individuals, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted).  Here, the commonality requirement is readily satisfied.  There are multiple questions of law and fact – centering on CITGO's text messaging marketing program – that are common to the Settlement Class, that are

alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members"). Plaintiff is typical of absent Settlement Class members because he received CITGO Marketing Texts and suffered the same injuries as them and because they will all benefit from the relief achieved.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. Ostrow Decl. ¶ 20, Exhibit 1. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions. Class Counsel devoted substantial time and resources to vigorous litigation of the Action.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted).  Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

Based on the foregoing, the Settlement is fair, adequate and reasonable.

## III.    APPLICATION FOR SERVICE AWARD

Pursuant to the Settlement, Class Counsel respectfully request, and Defendant does not oppose, a Service Award for the Class Representative in the amount of $5,000.  Agreement ¶ 74. Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006).  "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action."  *David v. American Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010).  Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives. *See, e.g.*, *Stallworth v. Monsanto Co.*, No. PCA 73-45. 198) U.S. Dist. LEXIS 12858, at *20-21 (N.D. Fla. June 26, 1980) (approving service awards ranging from $10,000 to $20,000 to four named plaintiffs, "each of whom devoted substantial time

to the prosecution of th[e] lawsuit"); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding class representatives $300,000 each, explaining that "the magnitude of the relief the Class Representatives obtained on behalf of the class warrants a substantial incentive award."); *Spicer v. Chicago Bd. Options Exchange, Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving service awards ranging from $5,000 to $100,000, and awarding $10,000 to each named plaintiff).

The relevant factors include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation. *See, e.g.*, *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). These factors, as applied to this Action, demonstrate the reasonableness of the requested Service Award to Plaintiff. Ostrow Decl. ¶ 21. Plaintiff provided substantial assistance that enabled Class Counsel to successfully prosecute the Action including submitting to interviews with Class Counsel, reviewing all material filings, including approving the Agreement, locating and forwarding responsive documents and information, and attending an all-day mediation. Plaintiff was also prepared to devote additional time to deposition and to be available for trial, if necessary. In so doing, Plaintiff was integral to forming the theory of the case, and litigating it through settlement. Ostrow Decl. ¶ 22.

Plaintiff not only devoted time and effort to the litigation, but the end result of his efforts, coupled with those of Class Counsel, provided a substantial benefit to the Settlement Class. Ostrow Decl. ¶ 23. The Service Award of $5,000 is less than 0.0007% of the Settlement Fund, a ratio that falls well below the range of what has been deemed to be reasonable. *Id.* at ¶ 24; s*ee, e.g.*, *Enter. Energy Corp. v. Columbia Gas Transmission*, 137 F.R.D. 240, 251 (S.D. Ohio 1991)

(approving service awards totaling $300,000, or 0.56% of a $56.6 million settlement).  The Service Award requested here is reasonable.

## IV.     APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

Pursuant to the Agreement and the Notices, and consistent with recognized class action practice and procedure, Class Counsel respectfully request an award of attorneys' fees equal to one-third of the $8,0000,000 Settlement Fund.  Class Counsel also request reimbursement of limited out-of-pocket costs and expenses totaling $33,858.06 incurred in connection with the prosecution of the Action and in connection with the Settlement. Ostrow Decl. ¶ 25.  Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms.  *Id*. ¶ 26. The requested fee is within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).  For the reasons detailed herein, Class Counsel submit that the requested fee is appropriate, fair and reasonable and respectfully requests that it be approved by the Court.

### A.     <u>The Law Awards Class Counsel Fees From the Common Fund Created Through Their Efforts.</u>

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained.  *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs.  The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts."  *In re Gould Sec. Litig*., 727 F. Supp. 1201, 1202 (N.D. Ill. 1989) (citation omitted).  The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense

of the successful litigant. *Van Gemert*, 444 U.S. at 478. As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole." *Sunbeam*, 176 F. Supp. 2d at 1333 (citing *Van Gemert*, 444 U.S. at 478); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval."). Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons, and deter future misconduct of a similar nature. *See, e.g.*, *Mashburn*, 684 F. Supp. at 687; *see also Deposit Guar. Nat'l Bank v. Rope*, 445 U.S. 326, 338-39 (1980). Adequate compensation promotes the availability of counsel for aggrieved persons:

> If the plaintiffs' bar is not adequately compensated for its risk, responsibility, and effort when it is successful, then effective representation for plaintiffs in these cases will disappear . . . . We as members of the judiciary must be ever watchful to avoid being isolated from the experience of those who are actively engaged in the practice of law. It is difficult to evaluate the effort it takes to successfully and ethically prosecute a large plaintiffs' class action suit. It is an experience in which few of us have participated. The dimensions of the undertaking are awesome.

*Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1375-76 (D. Minn. 1985).

In the Eleventh Circuit, class counsel are awarded a percentage of the funds obtained through a settlement. In *Camden I* – the controlling authority regarding attorneys' fees in common-fund class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774.

The Court has discretion in determining the appropriate fee percentage. "There is no hard

26

and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774).

The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award as an attorney's fee to class counsel in class actions:

> (1)    the time and labor required;
> (2)    the novelty and difficulty of the relevant questions;
> (3)    the skill required to properly carry out the legal services;
> (4)    the preclusion of other employment by the attorney as a result of his acceptance of the case;
> (5)    the customary fee;
> (6)    whether the fee is fixed or contingent;
> (7)    time limitations imposed by the clients or the circumstances;
> (8)    the results obtained, including the amount recovered for the Clients;
> (9)    the experience, reputation, and ability of the attorneys;
> (10)   the "undesirability" of the case;
> (11)   the nature and the length of the professional relationship with the clients; and
> (12)   fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

These 12 factors are guidelines and are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). The Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775. As applied, the *Camden I* factors support the requested fee.

### 1.      The Claims Against Defendant Required Substantial Time and Labor.

Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable.  Ostrow Decl. ¶ 27.  The organization of Class Counsel ensured that the work was coordinated to maximize efficiency and minimize duplication of effort.  *Id*.  ¶ 28.  Class Counsel devoted substantial time to investigating the claims against Defendant.  *Id.* at ¶ 29.  Class Counsel also expended resources researching and developing the legal claims at issue.  *Id.* at ¶ 30.  Substantial time and resources were also dedicated to conducting discovery. *Id*. at ¶ 31.  Class Counsel prepared and took the depositions of party and non-party witnesses, and devoted substantial time to reviewing over 100,000 pages of documents and electronic data produced by Defendant and third-parties.  *Id*.  Class Counsel also served written discovery.  *Id*.  As is evident by the docket, the case was vigorously contested during the time before Settlement.  *Id.*

Settlement negotiations consumed further time and resources.  Ostrow Decl. ¶ 32.  The initial and second mediation sessions required substantial preparation and document review. Finally, a significant time was devoted to negotiating and drafting of the Agreement and the preliminary approval process, and to all actions required thereafter pursuant to the preliminary approval order.  All of this work consumed a substantial amount of time. *Id*.  ¶ 33.

All told, Class Counsel's coordinated work paid dividends for the Settlement Class.  Each of the above-described efforts was essential to achieving the Settlement before the Court.  Ostrow Decl. ¶ 34.  The time and resources devoted to this Action readily justify the requested fee.

### 2.      The Issues Involved Were Novel and Difficult, and Required the Skill of Highly Talented Attorneys.

"[P]rosecution and management of a complex national class action requires unique legal skills and abilities."  *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987).  This Court witnessed the quality of our legal work, which conferred a substantial benefit on the Settlement

Class in the face of significant litigation obstacles.  Ostrow Decl. ¶ 35.  Our work required the acquisition and analysis of a significant amount of factual and legal information.  *Id*.

In any given case, the skill of legal counsel should be commensurate with the novelty and complexity of the issues, as well as the skill of the opposing counsel.  Litigation of this Action required counsel trained in class action law and procedure as well as the specialized issues presented here, such as analyzing arbitration clauses and the interplay of varying state laws.  Class Counsel possess these attributes, and their participation added value to the representation of this Settlement Class.  Ostrow Decl. ¶ 36. The record demonstrates that the Action involved complex and novel challenges, which Class Counsel met at every juncture.  *Id.* at ¶ 37.

In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel.  *See Camden I*, 946 F.2d at 772 n.3; *Ressler*, 149 F.R.D. at 654.  Throughout the litigation, Defendant was represented by extremely capable counsel.  They were worthy, highly competent adversaries.  Ostrow Decl. ¶ 38; *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (stating that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results").

### 3. Class Counsel Achieved a Successful Result.

Given the significant litigation risks Class Counsel faced, the Settlement represents a successful result.  Rather than facing years of costly and uncertain litigation, the Settlement Class Claimants will likely receive a cash benefit of nearly 50% of their expected recovery at trial. Ostrow Decl. ¶ 39.  Further, Settlement Class Claimants' recovery will not be reduced by the substantial fees and costs associated with Notice or Settlement administration as CITGO is required to pay up to $300,000 of such fees separate and apart from the Settlement Fund.  *Id*.

### 4.      The Claims Presented Serious Risk.

The Settlement is particularly noteworthy given the combined litigation risks.  Ostrow Decl. ¶ 40. As discussed, Defendant raised substantial and meritorious defenses.  Success under these circumstances represents a genuine milestone.

Consideration of the "litigation risks" factor under *Camden I* "recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk.  Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case.  All of this and more is enveloped by the term 'undesirable.'" *Sunbeam*, 176 F. Supp. 2d at 1336.

Further, "[t]he point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them." *Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988).  "Undesirability" and relevant risks must be evaluated from the standpoint of class counsel as of the time they commenced the suit – not retroactively, with the benefit of hindsight. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 112 (3d Cir. 1976); *Walco*, 975 F. Supp. at 1473.

Prosecuting the Action was risky from the outset.  Ostrow Decl. ¶ 41.  Defendant was confident in their opposition to Plaintiff's motion for class certification, and was preparing its motion to compel class-wide arbitration and motion for summary judgment. *See* Section D.2.d., *supra* (Plaintiff's summary of Defendant's numerous defenses).

The $8,000,000 cash recovery obtained through the Settlement is substantial, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of Settlement.  Any of these risks could easily have impeded, if not altogether derailed, Plaintiff's and the Settlement Class' successful prosecution of these claims.

30

The recovery achieved by this Settlement must be measured against the fact that any recovery by Plaintiff and Settlement Class Members through continued litigation could only have been achieved if: (i) Plaintiff was able to certify a class and establish liability and damages at trial; and (ii) the final judgment was affirmed on appeal. The Settlement is an extremely fair and reasonable recovery for the Settlement Class in light of Defendant's defenses, and the challenging and unpredictable path of litigation Plaintiff and the certified class would have faced absent the Settlement. Ostrow Decl. ¶ 42.

### 5.    Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis.

In undertaking to prosecute this case on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. Ostrow Decl. ¶ 43. That risk warrants an appropriate fee. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548); *see also Cooper v. Nelnet, Inc.*, No. 6:14-cv-314-Orl-37DAB, 2015 U.S. Dist. LEXIS 100350, at *5 (M.D. Fla. July 31, 2015) ("the Court recognizes that it is not easy for consumers to obtain counsel in TCPA actions, especially considering that the work for a class action is typically done on a contingent basis and that TCPA law is relatively new."); *In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent-fee basis, plaintiffs' counsel must be adequately compensated for the risk of non-payment).

Public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee. Ostrow Decl. ¶ 44. The progress of the Action to date shows the inherent risk faced by Class Counsel in accepting and prosecuting the Action on a contingency fee basis. Despite Class Counsel's effort in litigating this Action, we remain completely

31

uncompensated for the time invested in the Action, in addition to the substantial expenses we advanced. Ostrow Decl. ¶ 44.  There can be no dispute that this case entailed substantial risk of nonpayment for Class Counsel.

### 6.      The Requested Fee Comports with Fees Awarded in Similar Cases.

Counsel's requested fee of 33.33% of the Settlement Fund is within the range of fees typically awarded in similar cases.  Ostrow Decl. ¶ 45.  Numerous decisions within and outside of the Southern District of Florida and the Eleventh Circuit have found that a 33.33% fee is within the range of reason under the factors listed by the *Camden I*.  "[F]ederal district courts across the country have, in the class action settlement context, *routinely* awarded class counsel fees in excess of the 25 percent 'benchmark.'"[5]  *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1210 (S.D. Fla. 2006) (emphasis added) (awarding fees equaling 31.33%); *Legg v. Laboratory Corp. of America*, 14-cv-61543-RLR, Dkt. 227, p.7 (S.D. Fla. Feb. 18, 2016) (FACTA case awarding one-third of gross recovery for attorneys' fees, plus expenses); *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, at *27 (S.D. Fla. Nov. 5, 2015) (finding that a request for 30% of a $20 million dollar fund is justified); *Wolff v. Cash 4 Titles*, No. 03-22778- CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citing Circuit case law and listing Southern and Middle District of Florida attorneys' fees awards); *In re: Terazosin Hydrochloride Antitrust Litigation*, 99-1317-MDL-Seitz, 2005 U.S. Dist. LEXIS 43082 (S.D. Fla. April 19, 2005) (awarding fees of 33.33 % of settlement); *In re: Managed Care Litig. v.*

---

[5] *See also* 1 *Court Awarded Attorney Fees*, ¶ 2.06[3], at 2-88 (Matthew Bender 2010) (noting that, "when appropriate circumstances have been identified, a court may award a percentage significantly higher" than 25%); 4 *Newberg on Class Actions*, § 14:6, at 551 (4th ed. 2002) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

*Aetna*, MDL No. 1334, 2003 U.S. Dist. LEXIS 27228, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement); *Gutter v. E.I. Dupont De Nemours & Co.*, 95-2152-Civ-Gold, 2003 U.S. Dist. LEXIS 27238 (S.D. Fla. May 30, 2003) (awarding fees of 33.33 % of settlement); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33.33 % of settlement).[6]

Class Counsel's fee request falls within the range of the private marketplace, where contingency fee arrangements often approach or equal forty percent of any recovery. *See Continental*, 962 F.2d at 572 ("The object in awarding a reasonable attorneys' fee . . . is to simulate the market."); *RJR Nabisco, Inc. Sec. Litig.*, Fed. Sec. L. Rep. (CCH) ¶ 94, 268 (S.D.N.Y. 1992) ("[W]hat should govern [fee] awards is . . . what the market pays in similar cases"). And, "[i]n tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." *Blum v. Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring); *see also Kirchoff v. Flynn*, 786 F.2d 320, 323, 325 n.5 (7th Cir. 1986) (noting "40 percent is the customary fee in tort litigation"); *In re Public Serv. Co. of N.M.*, 1992 WL 278452, at *7 (S.D. Cal. July 28, 1992) ("If this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery.").

Finally, Class Counsel's fee request also falls within the range of awards in TCPA cases within this Circuit and elsewhere. *See ABC Bartending School of Miami, Inc., v. American*

---

[6] *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403 (S.D. Tex. 1999) (35.1%); *see also Gaskill v. Gordon*, 942 F. Supp. 382, 387-88 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998) (finding that 33% is the norm, and awarding 38% of settlement fund); *In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) (36%); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (33.8 %); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 498 (D.D.C. 1981) (45%); *Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.*, 480 F. Supp. 1195, 1199 (S.D.N.Y. 1979), *aff'd*, 622 F.2d 1106 (2d Cir. 1980) (approximately 53%).

*Chemicals & Equipment, Inc.*, No. 15-CV-23142-KMV (S.D. Fla. April 11, 2017) (granting fees and costs amounting to one-third of the $1,550,000.00 settlement fund); *Guarisma v. ADCAHB Med. Coverages, Inc.*, Case No. 1:13-cv-21016 (S.D. Fla. June 24, 2015) (granting fees and costs amounting to one-third of the $4,500,000.00 settlement fund); *De Los Santos v. Millward Brown Inc.*, 13-cv-80670-DPG (S.D. Fla. 2015) (granting fees and costs amounting to one-third of gross recovery); *Matthew Benzion v. Vivint, Inc.*, 12-61826-CIV-ZLOCH (S.D. Fla. 2015) (grating fees and costs amounting to one-third of the $6,000,000 settlement fund); *In re Capital One Tel. Consumer Prot. Act Litig*, 2015 U.S. Dist. LEXIS 17120, *62 (N.D. Ill. Feb. 12, 2015) (analyzed dozens of TCPA class settlements throughout the country and determined that a risk adjusted fee structure would provide a fee of 36% for the first $10 million and then lower percentages after that); *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2017 U.S. Dist. LEXIS 91448, at *5 (M.D. Fla. June 5, 2017) (granting fees and costs amounting to 30% of the $3.75 million dollar fund).[7]

Consequently, the attorneys' fee requested is appropriate and should be awarded.

### 7.    The Expense Request Is Appropriate.

Class Counsel also request reimbursement for a total of $33,858.06 in litigation costs and expenses.  Ostrow Decl. ¶ 46.  This sum corresponds to certain actual out-of-pocket costs and expenses that Class Counsel necessarily incurred and paid in connection with the prosecution of

---

[7] *Martin v. Dun & Bradstreet, Inc. et al*, No. 1:12-cv-00215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (awarding one-third fee payment of distributed fund); *Cummings v Sallie Mae*, 12 C-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (awarding one-third of the common fund for fees); *Hanley v. Fifth Third Bank*, No. 1:12-cv-01612 (N.D. Ill. Dec. 23, 2013) (Castillo, J.) (Dkt. No. 86) (awarding one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-01925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (approving payment of one-third of common fund); *Paldo Sign and Display Company v. Topsail Sportswear, Inc.*, No. 1:08-cv-05959 (N.D. Ill. Dec. 21, 2011) (Kennelly, J.) (Dkt. No. 116) (approving one-third of the settlement fund plus expenses); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 1:07-cv- 05456 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424) (Dkt. No. 100) (same); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 1:07-cv-05953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Dkt. No. 146).

the Action and the Settlement. *Id.* Specifically, these costs and expenses consist of: (1) $22,972.99 in fees and expenses incurred for three experts whose services were critical in identifying members of the certified class, determining their damages, and rebutting expert reports submitted by CITGO's expert; (2) $2,605.64 in court reporter fees and transcripts associated with depositions and hearings in the Action; (3) $3,675.38 in mediators' fees and expenses; and (4) $4,604.05 in general litigation costs, including court fees and travel. *Id.* These out-of-pocket expenses were reasonably and necessarily incurred and paid in furtherance of the prosecution of this Action. *Id.*

## V. CONCLUSION

The securement of $8,000,000 in cash, plus up to $300,000 for fees and costs associated with the Notice Program and Settlement Administration represents a very good result given the obstacles confronted in this Action. The Settlement more than satisfies the fairness and reasonableness standard of Rule 23(e), as well as the class certification requirements of Rules 23(a) and (b)(3). Further, Class Counsel's request for a Service Award for the Plaintiff and the application for attorneys' fees and expenses is reasonable under all the circumstances. The fee request satisfies the guidelines of *Camden I* given the results achieved, the notable litigation risks, the extremely complicated nature of the factual and legal issues, and the time, effort and skill required to litigate claims of this nature to a satisfactory conclusion.

Accordingly, Plaintiff and Class Counsel respectfully request that this Court: (1) grant Final Approval to the Settlement and enter the proposed order attached as *Exhibit D*; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (3) appoint Matthew Gottlieb as Class Representative; (4) appoint as Class Counsel the law firms and attorneys listed in paragraph 14 of the Agreement; (5) approve the requested Service Award in the amount of $5,000; (6) award Class Counsel attorneys' fees in the

amount of one-third of the Settlement Fund, and the reimbursement of expenses in the amount of

$33,858.06; and (7) enter Final Judgment dismissing the Action with prejudice.


Dated: October 13, 2017.

Respectfully submitted,

By: /s/ Jeff Ostrow
Jeff Ostrow (Florida Bar No. 121452)
Scott Edelsberg (Florida Bar No. 100537)
KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT
One West Las Olas Boulevard, Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
Email:  ostrow@kolawyers.com
Email:  edelsberg@kolawyers.com

Avi Kaufman (Florida Bar No. 84382)
KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, Florida 33134
Telephone: 305-384-7562
Email:  kaufman@kolawyers.com

Andrew Shamis (Florida Bar No. 101754)
SHAMIS & GENTILE, P.A.
14 NE 1st Ave., Suite 400
Miami, Florida 33132
Telephone: 305-479-2299
Email:  ashamis@sflinjuryattorneys.com

*Attorneys for Plaintiff, Matthew Gottlieb*
*and all others similarly situated*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 13th day of October, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I also certify that the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

By: /s/ Jeff M. Ostrow
Jeff Ostrow (Florida Bar No. 121452)
KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT
One West Las Olas Boulevard, Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
Email:  ostrow@kolawyers.com